*92 OPINION of the Court, by
Ch. J. Bibb.
Smith was complainant in the court below, against Swearin-Sen and others, who held the elder grant, under an entry adverse to that under which the complainant derived The circuit court sustained the entry of Smith and Burnley, and gave figure to the survey ; with which decree the defendants were dissatisfied, and apPea^ec* t0 this court. Two questions are made, the one as to the validity of the entry, and the other as to the figure the survey shall assume incase the entry is valid, aPPehants rely on the strength of the ,elder grant, The entry in question will be the better comprehended by reciting the first and progressive entries, in the re-pL1lar order of time and dependances, which are as fol-*°WS *
“ January 10th, 1780, John South, sen. enters 400 acres certificate, &c. lying on Johnson’s fork of Lick-big, on the south side thereof, about one and a half mile below the Sycamore forest
w January 11th, 1780, Van Swearingen, assignee, &c. enters 400 acres in Kentucky, lying on Johnson’s fork of Licking, a small distance, above the claim of John South, near a spring, where the letters V. S. are cut a tree"
“ Máy 19th, 1780, Charles Smith and Zaehariah. Burnley, enter 4000 acres, beginning on the north side °f Tan Swearingen*s pre-emption and settlement on Johnson’s creek, running northwest for quantity.”
The Sycamore forest, and Johnson's fork, were objects of general notoriety in their neighborhood, and with those acquainted with the stream, before the dates these entries, and continued to be so, long after. A trace from Boonsborough to the lower salt springs, passed through the said forest, and down the said fork. The cajj pür T0jln South’s claim, in the entry of Van Swear* ingen, is considered as good general description tojead into the neighborhood, but we do not consider it as be-*nS concerned in giving figure or precise locality to Van Swearingen. The call for a “ smalt distance above the claim of John South,” excludes the idea of contiguity. Therefore, although South’s entry cannot be precisely located, (as the centre of the forest only, is noted on the *93 plat, but not its extent or approximation to the fork,) yet that does not detract from the utility of the call for South, as general description. Having arrived thus at the neighborhood of Van Swearingen, we think the spring a good object of location, as used in the entry, The letters V. S. were cut on a Hickory tree before the date of the entry, and remained unobliterated for some time after; they were plainly visible from the spring; thus the spring is identified, and when found, would have satisfied the enquirer, that he had found the object called for in Van Swearingens entry. 1 he spring is but a short distance from the fork, and runs into it ; it was not only a subject of natural notoriety, calculated i» .. i . r \ J \ from its size to attract the attention ot those who might pass by, but had actually become known and a subject of conversation at Strode’s, the nearest station at that , . , , , , , . ,. day ; it had moreover, become the subject ol conversation at the station, as being Van Swearingen’s spring, and as the place where he claimed his settlement and . 1 , . „ - pre-emption, jp.ut two other springs* are represented on the plat, or spoken of by the witnesses 3 both of which had also attracted the early attention of expío-rers and hunters, and were known at Strode s station ; but these were so near the one at which the tree was marked, that to search at all three for the marked tree, ' t ' may be considered but a reasonable diligence to ask of the holders of warrants, who wished to avoid this location ; and when they had searched at all three, the letters, were an unerring characteristic of the spring intended. From these circumstances, and from some others which arise out of the depositions, but which cannot be exhibited without great prolixity, the presumption is too violent to be resisted, that any holder of a warrant, making reasonable enquiry for the spring and tree called for in Van Swearingen’s entry, could have found it immediately after the date thereof. The expressions in this entry, are rather awkward, and call for the application of that benevolent maxim of the law, “ et benigne interpretanda sunt verba laicorum.v Taking the entry with the surveyor in conjunction with the certificate of the commissioners, or considering it even upon *94 its face, viewing all its parts together, and the naean--ing seems plainly this, that he enters 400 acres, “ xuherc the letters V. S. are cut on a tree, near a spring.” — With this reading of the entry, it must be declared valid, to be surveyed with lines to the cardinal points, with the marked tree (or spring, for the difference is not worth regarding) at the intersection of the diagonals of a square area of 400 acres.
The entry to be surveyed >n points^ marked tree m middle,
son’screek corrected by call S’rVho calls for John* son’s fork,
A'call for pre-elt‘i>,tl0n settlement be-fure pre-emption was located ^f11 be attacb-ed to settlement only,
To join V. $„ on,the nortb» west fur quan. tity, how to be s“r.ve)’cl1,
North-west not flexibleakc northwardly,
*94 In Smith’s and Burnley’s entry, the call for Johnson’s creek, instead oí fork, was objected to-; but the call for Van Swearingen, who calls for Johnson’s fork, corrects any possible ambiguity which might otherwise have grown out of the use of the word creek.
As Van Swearingen’s pre-emption had not been located at the date of this entry, the call for his pre-emption and settlement must be considered as a call for the settlement land only, for the reasons given in the cases of Crow's heirs vs. Harrod's heir, Hard. 441, and Craig vs. Machir, ante 10.
The only remaining question is, whether after adjoin--ing Van Swearingen on the north, the survey shall be made at right angles, by running due north from Swear-ingen, or oblique angled by running northwest. Thq, appellants contended for the former and cited the case of Craig and Huwkins's heirs, Dec. 1808. That was, on an entry beginning at the head of a creek, “ running down the same one mile, extending northxvardly for quantity.” The court, in that case decided that north-wardly, was only descriptive of the side of th* base line on which the land was to lie ; that it did not in common parlance, mean the same as north, but only as approaching towards the north rather than towards any of the other cardinal points. But here we cannot make northwest so flexible^ especially when the locator has called to adjoin a claim on the north, and run northxvest for quantity. It would be torturing xvords and meaning.. without any apparent ambiguity, were we to say that northwest meant north, or that joining Swearingen on the north and running northxvest, meant running north, or at right angles to the base given ; the locator seems to have understood correctly the base given, as a parallel of north latitude, and we cannot suppose him so ignorant as not to understand, that northwest, was not-north, or that a line run northwest, from an east and

*0

*95 we*t line, would not make aright angle. Therefore* the direction given by the circuit court, to project the survey northwest for quantity was correct. The surVey of Burnley and Smith, should be equilateral, with opposite angles equal, and opposite sides parallel, (Vide Porter’s heirs vs. Gass, Pr. Dec. 206—M’Millen vs. Miller’s heirs, Hard. 499,) having the middle of the base common with the middle of the adjoining line of Van Swearingen, as decreed by the court below. Therefore it seems that there is jo error in the said decree. Decree affirmed.

 Note.— One of these springs was on the north fork, about a mile below the tree marked V. S. the other about half a mile ftiJllower down the creek-r- and both near a trace from Boonsborough, to the lower Blue Licks,